UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| SHAUNNE OLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:06-cv-154-SEB-WGH |
| | ) | |
| HMS WESTPAC EXPRESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON PLAINTIFF'S
MOTION FOR MAINTENANCE AND CURE**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon an Order of Reference signed by District Judge Sarah Evans Barker on August 22, 2007. (Docket No. 26). Pursuant to that order, the Magistrate Judge is to file a report and recommendation concerning Plaintiff's Motion for Maintenance and Cure filed January 19, 2007. (Docket Nos. 11-12). Defendant's Response in Opposition was filed May 10, 2007 (Docket No. 18), and Plaintiff's Reply was filed May 14, 2007 (Docket No. 19). Defendant was allowed to file a Sur-Reply over the objection of the Plaintiff (*see* Docket No. 30), and the Sur-Reply was filed on September 25, 2007 (Docket No. 31).

The matter was set for hearing on November 8, 2007. On October 12, 2007, Plaintiff was granted leave to file a Supplemental Brief, along with Exhibits A and B, within ten days. (Docket No. 39). However, no such

Supplemental Brief was filed of record, although redacted copies of Exhibits 1 and 2 were refiled with the Court in connection with a motion to seal. (Docket No. 41).

As the parties agreed at the hearing, the deposition transcript of Dr. Michael Florek was filed on December 13, 2007. (Docket No 53). On December 17, 2007, Plaintiff filed Proposed Findings of Fact and Conclusions of Law. (Docket No. 57). Defendant filed Proposed Findings of Fact and Conclusions of Law on December 19, 2007. (Docket No. 59). On December 20, 2007, Plaintiff filed certain Supplemental Proposed Findings of Fact and Conclusions of Law, as amended, in response to those filed by the Defendant. (Docket Nos. 62, 68). On January 8, 2008, upon leave of court, Plaintiff filed an Affidavit of Shaunne Olson dated December 14, 2007. (Docket No. 74). Based on Defendant's Status Report filed January 4, 2008 (Docket No. 71), the Defendant has been allotted some additional time to respond to Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law, as amended, or anything filed by Plaintiff while she was out of the country. However, Defendant has filed no additional responses or formal motions for extensions of time to respond.

The Magistrate Judge, being duly advised, now enters Findings of Fact and Conclusions of Law, along with his recommended decision, as follows:

## Conclusions of Law

1. Maintenance and cure "are rights given to seamen as incidents of their employment." *Mullen v. Fitz Simons & Connell Dredge & Dock Co.,* 191

F.2d 82, 85 (7th Cir. 1951). "A shipowner is obligated to provide maintenance and cure for sick or injured members of the crew." *Bennett v. Grand Victoria Resort & Casino,* 2002 WL 440235 (S.D. Ind. March 7, 2002). Maintenance consists of a shipowner's payment for the food and lodging expenses that a seaman incurs while ashore as a result of illness or accident. *Clifford v. Mt. Vernon Barge Service, Inc.,* 127 F.Supp.2d 1055, 1057 (S.D. Ind. 1999). It consists of a per diem living allowance that is paid when the seaman is out of the hospital and has failed to reach the point of "maximum cure." *Smith v. Apex Towing Co.,* 949 F.Supp. 667, 670 (N.D. Ill. 1997). Cure consists of the payment of medical expenses incurred in the treatment of the seaman's injury or illness. *Clifford,* 127 F.Supp.2d at 1057 n.2.

    2. The Supreme Court has noted the broad scope of the right to maintenance and cure:

> Among the most pervasive incidents of the responsibility anciently imposed upon a shipowner for the health and security of sailors was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service. In the United States this obligation has been recognized consistently as an implied provision in contracts of marine employment. Created thus with the contract of employment, the liability . . . in no sense is predicated on the fault or negligence of the shipowner. Whether by traditional standards he is or is not responsible for the injury or sickness, he is liable for the expense of curing it as an incident of the marine employer-employee relationship. *So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility . . . . Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection.*

*Aguilar v. Standard Oil Co. of N.J.,* 318 U.S. 724, 730-31, 63 S.Ct. 930, 87 L.Ed. 1107 (1943)(emphasis added; footnotes omitted).  Hence, the right of a seaman to maintenance and cure for injuries suffered while in the service of the vessel "is a virtual certainty in the absence of wilful misbehavior on his part." *Rufolo for Use of Rossiello v. Midwest Marine Contractor, Inc.,* 912 F.Supp. 344, 352 (N.D. Ill. 1995).  A seaman's right to maintenance and cure is to be construed liberally, with all doubts to be resolved in favor of the seaman.  *Vaughan v. Atkinson,* 369 U.S. 527, 532, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

      3.  The right to maintenance and cure provided for injuries occurring in the service of a vessel extends to "any illness or injury which occurred, was aggravated, or manifested itself while the seamen was in the ship's service . . . ."  *Smith*, 949 F.Supp. at 670.  This right has been extended to injuries that occur while on shore leave.  As the Supreme Court has explained, the rationale for extending maintenance and cure to instances that occur onshore is as follows:

> To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage.  The assumption is hardly sound that the normal uses and purposes of shore leave are 'exclusively personal' and have no relation to the vessel's business.  Men cannot live for long cooped up aboard ship without substantial impairment of their efficiency, if not also serious danger to discipline.  Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly.  No master would take a crew to sea if he could not grant shore leave, and no crew would be taken if it could never obtain it * * *  In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion.

> The voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports.  If in those surroundings the seaman, without disqualifying misconduct, contracts disease or incurs injury, it is because of the voyage, the shipowner's business.  That business has separated him from his usual places of association.  By adding this separation to the restrictions of living as well as working aboard, it forges dual and unique compulsions for seeking relief wherever it may be found.  In sum, it is the ship's business which subjects the seaman to the risks attending hours of relaxation in strange surroundings.  Accordingly it is but reasonable that the business extend the same protections against injury from them as it gives for other risks of the employment.

*Warren v. U.S.,* 340 U.S. 523, 529-30, 71 S.Ct. 432, 95 L.Ed. 503 (1951) (quoting *Aguilar,* 318 U.S. at 733-34).

    4.  Maintenance and cure may be awarded by courts even where the seaman has suffered from an illness pre-existing his employment, but there is a general principle that will be denied where he knowingly or fraudulently conceals this illness from the shipowner.  *McCorpen v. Central Gulf S.S. Corp.,* 396 F.2d 547 (5th Cir. 1968), *cert. denied,* October 14, 1968, *see* 89 S.Ct. 223.  In cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment.  Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance.  If the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a

matter of importance, he would be liable for maintenance and cure.  He will be liable if it is found that there existed reasonable grounds for the seaman's good-faith belief that he was fit for duty.  *Burkert v. Weyerhaeuser S.S. Co.,* 350 F.2d 826 (9th Cir. 1965).  On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure which is plainly desired, then he is not entitled to an award of maintenance and cure.  *Sulentich v. Interlake S.S. Co.,* 257 F.2d 316 (7th Cir. 1958).  The defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage.

     5.  The shipowner is obliged to pay maintenance and cure until the seaman has reached the point of maximum cure; *i.e.,* until the seaman is cured or his condition is diagnosed as permanent and incurable.  *See Vella v. Ford Motor Co.,* 421 U.S. 1, 5, 95 S.Ct. 1381, 1384, 43 L.Ed.2d 682 (1975), and *Vaughan,* 369 U.S. at 531, 82 S.Ct. at 1000.

     6.  In the event that the shipowner clearly was obligated to pay maintenance and cure but instead wilfully and persistently chose not to do so, the Court may also award reasonable attorneys' fees.  *Vaughan,* 369 U.S. at 530-31.

**Findings of Fact**

**(a)  Findings of Fact Related to Whether the Plaintiff Is Entitled to Maintenance and Cure:**

1.  On May 25, 2006, Plaintiff was working on the vessel Westpac Express.  Towards the end of the workday (before 1800 hours) the Plaintiff and three others lifted a welder out of the port forward void.  The welder was lifted by four people via a rope.  (Defendant's Exhibit 5, Attachment 11, Statement of Kevin Bradley ("Bradley Statement")).

2.  The welder weighed between 60 pounds (Defendant's Exhibit 6) and 100 to 200 pounds.  (*Id.,* Bradley Statement).

3.  Plaintiff did not complain of hurting his back while the welder was successfully lifted.  (*Id.,* Bradley Statement).

4.  After the conclusion of his duty on the boat, Plaintiff went on shore leave with other shipmates, where they watched a kick boxing match and "bar hopped a little," including visitation at a topless bar.  (Plaintiff's Deposition pp. 54-56).  A dancer at the bar who was approximately 130 pounds sat on his lap for about five minutes.  (*Id.* at 58-59).

5.  At approximately 2130 hours on May 25, 2006, while off duty but on shore leave, Plaintiff twisted his back while getting off a bar stool.  He felt a twinge in his back when he did so.  (Defendant's Exhibit 5, Attachment 11, Report of Marine Accident, Injury or Death).

6. At 0230 hours on May 26, 2006, while getting out of bed, Plaintiff collapsed on the floor. He called a shipmate for help, and when the captain arrived, Plaintiff was immediately taken to a hospital. (*Id.,* Bradley Statement).

7. Regardless of whether the Plaintiff injured his back while lifting the welder, or whether he injured his back while he was on shore leave, Plaintiff was injured in the service of his vessel and is, therefore, entitled to maintenance and cure.

8. Plaintiff's actions in bar hopping, going to the bar, and allowing a 130-pound woman to sit on his lap are not the type of culpable conduct that will relieve the employer of the responsibility to pay maintenance and cure, as this is not wilful misbehavior or a deliberate act of indiscretion sufficient to deprive the seaman of his protection.

9. Plaintiff is entitled to maintenance and cure even if he had some pre-existing problems with his back, as under the law any illness or injury which was aggravated while the seaman was in the ship's service extends the right to maintenance and cure.

**(b)     Findings of Fact Related to When the Plaintiff Has Reached Maximum Medical Cure:**

10. Plaintiff was admitted to Pattaya Hospital in Bangkok under the care of Dr. Chayapinun in the early morning hours of May 26, 2006. (Defendant's

Exhibit 5, Attachment 21, Medical Report (Part 1)). He was diagnosed with an acute back muscle strain and was found to be unfit to return to duty through June 4, 2006. (*Id.,* Discharge Summary).

11. Plaintiff was again examined by Yasutsugu Yanami, M.D., at the Adventist Medical Center in Okinawa on June 2, 2006, where he was diagnosed with a low back sprain and found to be fit for duty. (*Id.,* Medical Report of Dr. Yanami).

12. Plaintiff did not believe he was fit for duty, and on June 13, 2006, he was discharged from the vessel in Okinawa, Japan. (*Id.,* Attachment 3, Certificate of Discharge of Merchant Seaman).

13. On June 19, 2006, Plaintiff saw Dr. Michael Florek. (Deposition of Dr. Florek at 17-18). At that time, Dr. Florek diagnosed the Plaintiff as having a lumbar sprain or strain. (Plaintiff's Exhibit I). He was referred to physical therapy at that time. Plaintiff began physical therapy on June 18, 2006. (Plaintiff's Exhibit K).

14. Plaintiff then visited Dr. Robert C. Kenny on August 9, 2006. (Plaintiff's Exhibit L). Plaintiff was subjected to an MRI and EMG studies, and he was referred to a neurosurgeon.

15. The MRI of the lumbar spine found a moderate-sized disc herniation at L4-5 and disc bulging at L5-S1. (Plaintiff's Exhibit M).

16. Plaintiff underwent surgery, specifically a left L4-5 medial facetectomy and excision of herniated nucleus pulposus and left L5-S1 medial

facetectomy and excision of osteopathic spur on November 30, 2006. (Plaintiff's Exhibit O).

17. There is no evidence before the Magistrate Judge of any intervening act or cause between May 26, 2006, and the surgery on November 30, 2006, which made the surgery necessary.

18. The maximum cure date in this case occurred when Plaintiff's physical condition became fixed as the result of surgical intervention. That date is whatever date the Plaintiff was released from the care of the neurosurgeon who performed the back operation.

19. The precise date the Plaintiff was released from the neurosurgeon is not in the materials before the Court. If the parties are unable to agree as to what that date is, the Court may need to conduct a further evidentiary hearing limited to that issue only.

**(c)   Findings of Fact Related to Whether the Plaintiff Is Precluded from Recovering Maintenance and Cure Because He Knowingly or Fraudulently Concealed His Illness from the Shipowner:**

20. Dr. Florek first saw the Plaintiff with respect to any back problems on May 23, 2005, when he was examined but no back treatment was recommended or provided. (Dr. Florek Depo. at 7).

21. In Dr. Florek's opinion, Plaintiff's pre-existing cerebral palsy condition did not impair his ability to work. (*Id.* at 9).

22. Plaintiff was returned to work on May 31, 2005, without restrictions. (*Id.* at 10).

23. On August 9, 2005, Plaintiff was offered employment with HMS Westpac Express, Inc. (Defendant's Exhibit 5, Attachment 42, Offer Letter). The offer of employment does not specifically condition the employment on meeting particular physical requirements or submitting to a physical examination.

24. The Position Description for the position for which the Plaintiff was hired required certain certifications and responsibilities. That document does not require the completion of a physical examination. (Exhibit 5, Attachment 42, Position Description).

25. There is no evidence before the Court that Plaintiff did not continue to perform duties between August 9, 2005, and May 25, 2006.

26. Plaintiff did submit to a physical examination by Dr. Florek on October 18, 2005. (Dr. Florek Depo. at 12). Dr. Florek completed an actual examination in addition to taking the Plaintiff's history. Based upon Dr. Florek's examination, he did not see anything that would keep the Plaintiff from working or restrict him from employment. (*Id.*)

27. In this case, the evidence before the Court shows that the Plaintiff began employment in August and continued employment through October without any requirement that he undergo a physical examination. Therefore, in this case, where the shipowner does not require a **pre**-employment medical examination or interview, the rule is that the seaman must disclose a past

illness or injury only when in his own opinion the shipowner would consider it a matter of importance.

28. In this case, although the Plaintiff may have had occasional prior back sprains, Dr. Florek, after examinations in May and October 2005, found Plaintiff fit for duty. Plaintiff could have reasonably, in his own opinion, believed that his past injuries were only sprains or strains and were not a matter of importance to the shipowner. This is because there is no evidence that he sustained injuries other than a back sprain or strain, and there is no evidence that he had sought treatment by a neurosurgeon for any other serious low back injury prior to the date he began work for the Defendant.

29. In this case, Defendant is liable for maintenance and cure because the Plaintiff had a good faith belief that he was fit for duty and did not knowingly or fraudulently conceal his illness from the shipowner.

**(d)    Findings of Fact Related to the Assessment of Attorneys' Fees:**

30. Defendant was clearly obligated to pay maintenance and cure in this case beginning at a point in time when Plaintiff saw Dr. Florek for the first time (June 19, 2006), and it was clear that Plaintiff's back condition was not completely resolved.

31. Plaintiff's counsel requested Defendant to pay maintenance and cure by letter on November 1, 2006. (Plaintiff's Exhibit P). Defendant has persistently failed to pay maintenance and cure since the time of the letter and, therefore, is obligated to pay a reasonable attorney's fees.

**Magistrate Judge's Recommendation**

This Court should **GRANT** the Plaintiff's Motion for Maintenance and Cure and award the Plaintiff maintenance and cure from June 16, 2006, until the date that the Plaintiff is or was released from the care of David L. Morris, his neurosurgeon.

The parties have not provided to the Court sufficient documentation concerning the appropriate amount of maintenance and cure in this case. If they are unable to agree as to an amount, the Defendant should pay an estimate of reasonable maintenance and cure within ten (10) days of the date of this order, and the Court should set a further hearing to establish the proper amount.[1]

The Court should award reasonable attorneys' fees for the Plaintiff's attorneys based on a reasonable hourly rate applied to a reasonable number of hours to file this motion, brief the motion, and prepare and present arguments.

---

[1] The initial reasonable amount should include at least the weekly or monthly cost of food for a low-cost meal plan for a male age 20-50 ($43.80/week or $189.70/month) as established by the USDA Chart (Plaintiff's Exhibit S), plus some amount directed to payment of minimum monthly charges for electricity, gas, and water/sewer. Some payment towards a reasonable portion of his lodging is also required, although the amount may be determined by consideration of the number of people living in the residence and the financial ability of others living in the residence to make the house payment.

The hours submitted should not include those for filing the suit generally, or for discovery necessary to pursue the underlying Jones Act claim.

**SO RECOMMENDED.**

**Dated:**  February 13, 2008

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Howard Michael Cohen
O'BRYAN BAUN COHEN KUEBLER
hcohen@obryanlaw.net

Dennis M. O'Bryan
O'BRYAN BAUN COHEN KUEBLER
dob@obryanlaw.net

**Mail copy to:**

Stephanie R. Miller
MILLER & MILLER
One Riverfront Plaza  # 602
Louisville, KY  40202